The recovery in this case is resisted on several grounds, one of which is that the promise to pay the price of the slaves was made to the sheriff; that the property was vested in him and divested out of Jones by the seizure on the execution. But, because the sheriff may (203) bring trespass or trover for the property, it does not necessarily follow that all title is taken from Jones; for the same actions may be brought by a carrier against a stranger who takes the property out of his possession, or by a factor, pawnee, or other person having a special property, each of whom is answerable for it to the person having the general property. In like manner, as the sheriff is answerable to the plaintiff in the action for the value of the goods seized, and as the defendant is discharged from the judgment and execution if goods are taken to the amount of the debt, it is essential of the safety of the sheriff that he should be armed with the means of protecting the property in his possession. Nevertheless whatever remains after the debt is paid belongs to the defendant in the action, who may recover it from the sheriff if it is received by him. Therefore, upon a sale by the sheriff the consideration moves from him to the amount of the sum which he is commanded to raise; but for the surplus the consideration moves from the defendant in the execution, and consequently a promise made to the sheriff as agent for the defendant in the execution will enure to the benefit of the latter. The custom of selling property at auction which is taken in execution, sanctioned as it is by usage, and I believe by some judicial decisions, is in general the safest way for all parties, as well as the most likely one to guard against abuses. But when, by the assent of all who are *Page 116 
interested in the property, an arrangement can be made to prevent its sacrifice and insure a sale for something like the proper value, while there is no rule of law or principle of policy forbidding such a course, it is strongly recommended by justice and humanity; and its evident effect in this very case has been beneficial both to creditor and debtor.
As to the objection arising from the imperfection of the slaves, (204) there was neither a warranty or a fraudulent concealment; and even a warranty is not binding where the defect is obvious, as in the case of a horse with a visible defect, and of a house without roof or windows warranted as if in perfect repair. Here the unhealthiness of the man was visible in his appearance, and with respect to the indolence of the other slave the purchaser might have made the necessary inquiries. I will not say that the concealment of some great moral defect may not be fraudulent in the seller, but such an instance does not occur in this case. The verdict and judgment appear to be right.
HENDERSON, J., concurred.
PER CURIAM. No error.